[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court are the Plaintiff, Yolanda Cortese's (hereinafter, the `plaintiff') June 2, 2000 and July 24, 2000 consolidated appeals from two decisions of the Defendant, Planning and Zoning Commission of the Town of Greenwich (hereinafter, the "Commission"), dated May 10, 2000 and July 3, 2000, denying her application for preliminary site plan and special permit approval. The plaintiff brings her appeals pursuant to General Statutes § 8-30g, the Affordable Housing Land Use Appeals Act.[1]
The plaintiff filed her application for preliminary site plan and special permit approval with the Commission on January 18, 2000. A public hearing on the application was held on April 18, 2000. The Commission denied the plaintiff's application for preliminary site plan by way of vote on May 2, 2000, and issued its first supplemental decision letter dated May 10, 2000, in which it articulated its reasons for denying the preliminary site plan portion of the application. On July 3, 2000, the Commission issued its second supplemental decision letter to the plaintiff in which it further set outs its reasons for denying the special permit portion of the plaintiff's application. The court, with the consent of all counsel of record, permitted Group Ninety-Nine, LLC, to intervene as a party defendant in both appeals on September 25, 2000, and then consolidated the appeals by Order dated February 9, 2001. The court heard oral argument on May 6, 2002. In lieu of a site visit, counsel submitted photographs of the site to the court, by agreement.
In her appeal brief, the plaintiff argues first that her application is one for an "affordable housing development," as contemplated by Conn. General Statutes § 8-30g and is therefore entitled to the procedural protections § 8-30g affords such applicants in the instant appeal. Second, she argues that the Commission's decision denying the special permit aspect of her application on grounds of health and safety concerns is not supported by substantial evidence in the record or by the policy considerations of the Greenwich Town Zoning Regulations. Lastly, she asserts that the Commission erred by not proposing any reasonable CT Page 11386 alternatives to her application for site plan and special permit approval as it is required to do under § 8-30g (c) of the General Statutes.
In its appeal brief, the Commission disputes the plaintiff's contention that her application is one for an "affordable housing development" as contemplated by § 8-30g of the General Statutes, and challenges her authority to invoke the special burden-shifting protections § 8-30g
affords such applicants. In the alternative, the Commission argues that even if the court finds the plaintiff's application to qualify under § 8-30g as an "affordable housing development," its decision denying her application was based upon important public interests and for valid reasons of public health, safety and welfare, and must therefore, be sustained.
I. PROCEDURAL HISTORY
The plaintiff commenced these consolidated appeals by service of process on Greenwich's Town Clerk and chairwoman of the Commission on two separate occasions, first on May 22, 2000 and again on July 10, 2000. The plaintiff filed her first appeal in the Superior Court, judicial district of Stamford-Norwalk at Stamford on June 2, 2000. She then filed her second appeal in the Stamford Superior Court on July 24, 2000. On September 25, 2000, Group Ninety-Nine, LLC, with the permission of all counsel of record, was permitted by the court to intervene in the first of the plaintiff's appeals bearing docket number CV00-0505689S. It was again granted such permission by the court in the second appeal, CV00-0505690S, on January 8, 2001. On September 28, 2000, both appeals were transferred to the Superior Court, judicial district of New Britain for full trial disposition. The parties. by way of stipulation, moved to consolidate the two appeals on February 9, 2001 and the court so granted said motion on said date.
The Commission filed its answer and return of record in both appeals on February 28, 2001. The intervening defendant, Group Ninety-Nine, LLC, filed its brief with the court on May 4, 2001 and the Commission filed its brief on May 7, 2001. The court received the plaintiff's brief on June 8, 2001. On May 6, 2002, the court heard oral argument on the plaintiff's consolidated administrative appeals.
II. FACTS
The court makes the following findings of fact from the Record. The plaintiff is the owner of record of the property at issue in the instant appeals, located at 701 West Putnam Avenue, in the Town of Greenwich, Connecticut (hereinafter, the "property"). She took title to the property CT Page 11387 by warranty deed dated February 26, 1996. The property is comprised of approximately 24,198 square feet of land area and is located within an R-6 residential building zone that is restricted to single and multiple family homes.[2] The property is actually made up of two separate parcels of land or lots.[3] On one parcel sits a 2,964 square foot, one-story concrete block commercial building containing both office and garage space (hereinafter, the "building") that is used in conjunction with the plaintiff's home oil-fuel delivery business. The other parcel is an empty building lot. The two parcels are accessed via a common driveway from West Putnam Avenue. The property is surrounded by mostly single and two-family residential homes.
At some time in 1992, the prior owner of the property applied to the Planning and Zoning Board of Appeals of the Town of Greenwich (hereinafter, the "ZBA") for a special exception and variance to allow the building to be used for the light repair and service of luxury automobiles.[4] The ZBA granted the prior owner's application for a special exception and variance by decision letter dated January 27, 1992. Following this decision, on March 3, 1992, the prior owner made application for final site plan approval to the Commission for conversion of the property from a well driller's shop and yard to an establishment for the light repair and service of automobiles. The Commission approved the prior owner's application by decision letter dated April 6, 1992 (Certificate of Decision dated June 7, 1992). The prior owner's use of the property continued until some time after 1994, when the prior owner relinquished title to the property in lieu of foreclosure.[5]
On or about February 26, 1996, the plaintiff began using the property as the operational base for her home oil-fuel delivery business. The plaintiff's use continues through to today. The plaintiff maintains an office on the property.[6] She uses the property to park, repair and garage the oil delivery trucks and service vans she utilizes in her business. During business hours, she permits employees of the business to park their personal vehicles on the property, and she uses the property as a central dispatch location for her delivery trucks and service vans. The plaintiff also maintains a containment well on the property to store the waste oil her business accumulates as a result of the on-site vehicle maintenance. Inside the building, the plaintiff parks approximately 6-8 oil delivery trucks on a nightly basis.
In 1997, the plaintiff filed an application with the Commission to add a second-story to the building on the property consisting of strictly office space. The Commission held a public hearing on the plaintiff's application on October 14, 1997, but never rendered a decision because the plaintiff withdrew her application following the close of the hearing. CT Page 11388
The plaintiff filed her application for preliminary site plan and special permit approval that is the subject of these appeals with the Commission on January 18, 2000. The application consists of two separate components: 1) the addition of a second floor to the existing concrete block building consisting of 2,232 square feet of office space and a 732 square foot dwelling unit;[7] and 2) the construction of a new building on the separate and adjacent building lot consisting of two 2-bedroom dwelling units measuring 1,139 square feet each.[8] A public hearing was held on the application on April 18, 2000. During the hearing, the Commission expressed a number of concerns regarding the plaintiff's proposal for preliminary site plan. The Commission voiced its concerns about the plaintiff's proposed expansion of a non-conforming use of the property located in an R-6 zone. Concerns were also raised by the Commission regarding the location of the affordable unit, its relative size compared to the other two market rate units, traffic, drainage, and parking problems on the property, the potential for encroachment onto neighboring properties and the possibility of soil contamination on the property. Following testimony from members of the public, the hearing was closed on April 18, 2000. On May 2, 2000, the Commission held a special meeting to vote on the plaintiff's application for preliminary site plan and special permit approval.
The Commission denied the plaintiff's application for preliminary site plan and special permit approval by way of vote on May 2, 2000 and issued its first supplemental decision letter to the plaintiff on May 10, 2000. In its letter denying the preliminary site plan portion of the application, the Commission made the following findings: "WHEREAS, the applicant seeks to place one affordable housing unit pursuant to CGS Sec.8-30g on the second floor of the garage in which the applicant's oil trucks are parked and repaired and the Commission finds that such a location exposes the occupants of such housing unit to significant health and safety hazards including fire, explosion, fumes and odors and it is not desirable that there be human living quarters in the same structure . . ." Furthermore, "WHEREAS, the Commission finds that there is a substantial public interest in health and safety in not allowing an affordable unit in such a structure and location which clearly outweighs the need for affordable housing." On July 3, 2000, the Commission issued its second supplemental decision letter to the plaintiff further articulating its reasons for denying the special permit portion of her application.
III. JURISDICTION
 A. AGGRIEVEMENT
CT Page 11389
It is well settled law in Connecticut that, "a statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Testa v. Waterbury,55 Conn. App. 264, 268 (1999). Pursuant to Connecticut General Statutes Section 8-30g (b) (now 8-30g (f)) "any person whose affordable housing application is denied may appeal such decision pursuant to the procedures of this section." Thus, "under Section 8-30g (b) (now 8-30g (f)) only an affordable housing applicant may initiate an appeal from a decision of a commission." Ensign Bickford Realty Corp. v. Zoning Commission,245 Conn. 257, 267 (1998). Said section of the General Statutes goes on to further state that "except as otherwise provided in this section [§8-30g (b) (now 8-30g (f))], appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable." Connecticut General Statutes Section 8-8, as amended by Public Act No. 01-195, governs appeals taken from a Town Planning and Zoning Commission to the Superior Court. Pursuant to Section 8-8 (a)(1), "In the case of a decision by a zoning commission an aggrieved person includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the boards." As a result, "pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the plaintiff's appeal." Jollyv. Zoning Board of Appeals, 237 Conn. 184, 192 (1996). "A person does not become aggrieved until the zoning authority has acted, and the question of aggrievement is a jurisdictional one for the court . . . To be entitled to an appeal, the plaintiffs are required to allege and prove that they are aggrieved by the decision of the commission." Quarry KnollII Corp. v. Planning Zoning Commission, 256 Conn. 674, 702-03
(2001). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected . . . We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) Gladysz v. Planning Zoning Commission, 256 Conn. 249, 255-56 (2001). The plaintiff has the burden of pleading and proving aggrievement. McNally v. ZoningCommission, 225 Conn. 1, 6 (1993). A plaintiff's status as owner of the subject property establishes aggrievement. Bossert Corporation v. City ofNorwalk, 157 Conn. 279, 285 (1968). In the present case, the plaintiff alleges statutory aggrievement, claiming that she is the owner of record of the subject property and that she is the proposed developer of housing with an affordable housing component. At the May 6, 2002 hearing the CT Page 11390 plaintiff offered into evidence a statutory form warranty deed for the subject property. (Plaintiff's-Appellant's Exhibit 1). Because the court finds that the plaintiff is the owner of the subject property, the court finds that she is aggrieved, pursuant to § 8-8 (a)(1), for purposes of bringing these appeals. See Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303. 308 (1991) (there was sufficient evidence before the court as to the plaintiff's status as owner of the property for the court to conclude that the plaintiff was aggrieved).
B. TIMELINESS AND SERVICE OF PROCESS
Pursuant to Connecticut General Statutes Section 8-8 (b), as amended byPublic Act No. 01-47, an appeal of a Town Planning and Zoning Commission decision shall be commenced by service of process within fifteen days from the date that the Commission's notice of decision is published. Service shall be commenced by leaving the process in the hands of, or at the usual place of abode of, the Clerk or Chairperson of the Commission, and with the clerk of the municipality. See General Statutes Section 8-8
(f) as amended by Public Act No. 01-17. The plaintiff commenced these consolidated appeals by service of process on Greenwich's Town Clerk and chairwoman of the Commission on two separate occasions, first on May 22, 2000 and again on July 10, 2000. Since the first legal notice of the denial of the plaintiff's application was published on May 9, 2000 and the second notice was published on June 27, 2000, these appeals are considered timely by the court. The court further finds that the proper parties were served pursuant to Connecticut General Statutes Section 8-8
(b), (e) and 8-30g (b) (Rev. 1999) (now 8-30g (f)). For appeals brought to the court pursuant to Connecticut General Statutes Section 8-8 (e) and8-30g, the citation is the writ of summons that directs the marshal or some other proper officer to seek out the defendant agency and to summon it to a particular sitting of a particular court on a specified day. It is analogous to the writ used to commence a civil action. See Tolly v.Department of Human Resources, 225 Conn. 13, 18-19 (1993).
It, when signed by competent authority, is the warrant that bestows upon the marshal or other proper officer to whom it is given for service the power and authority to execute its command. See McQuillan v.Department of Liquor Control, 216 Conn. 667, 671 (1990) and Hillman v.Greenwich, 217 Conn. 520, 525 (1991). A proper citation, therefore, requires not only the signature of a competent authority, such as a commissioner of the Superior Court, but the direction to a competent authority, such as a marshal, to summon the Commission to appear in court. The court finds that both files contain proper citations dated May 22, 2000, directing "ANY PROPER OFFICER" to summon the "PLANNING AND ZONING COMMISSION OF THE TOWN OF GREENWICH" to appear before the CT Page 11391 "Superior Court within and for the Judicial District of Stamford/Norwalk, at Stamford," and signed by Thomas J. Heagney, Commissioner of the Superior Court. Accordingly, the court has jurisdiction to hear and decide these consolidated appeals.
IV. SCOPE/STANDARD OF JUDICIAL REVIEW
In her brief, the plaintiff argues that her application is one for affordable housing and that therefore General Statutes (Rev. to 1999) Section 8-30g (c)(1) applies to her instant appeals and provides the trial court with the operative scope of judicial review. At the time her consolidated appeals were filed on June 2, 2000 and July 24, 2000, respectively, Section 8-30g was indeed in effect and applicable to affordable housing appeals.[9] During this time, "the scope of judicial review under General Statutes (Rev. to 1999)] § 8-30g (c)(1) require[d] the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision . . . [in a] formal, official, collective statement." (Emphasis in the original.) Christian Activities Council.Congregational v. Town Council of the Town of Glastonbury, 249 Conn. 566,583, 735 A.2d 231 (1999). The burden of proof was on the Commission to show that: (1) its decision and the reasons cited in its decision were supported by "sufficient evidence" in the record; (2) its decision was necessary to protect substantial public interests in health, safety or other matters which may lawfully be considered; (3) such public interests clearly outweighed the need for affordable housing; and (4) such public interests could not be protected by reasonable modifications to the affordable housing development. If "sufficient evidence" was demonstrated reasonably to support the Commission's determination as to all four parts of the standards for any one of the reasons given for its decision, the Commission's decision had to be upheld. Id. at 583, 589-592.
Although the scope of judicial review under Section 8-30g (c)(1)(A) has not changed since the time the plaintiff's appeals were filed, the scope of review under Subsections (B), (C) and (D) of the same statute has, as a result of the Connecticut Supreme Court's July 17, 2001 decision in Quarry Knoll III Corporation et al. v. Planning and Zoning Commission of the Town of Greenwich et al., 256 Conn. 674 (2001). In Quarry Knoll III, the court analyzed the effect of Public Act 00-206 Section 1(g)[10]
upon the scope of judicial review and determined that because that Act clarified the statutory standard, it could therefore be applied retroactively. "Therefore, the proper scope of review regarding whether the commission has sustained its burden of proof, namely that its decision is based upon the protection of some substantial public CT Page 11392 interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted — requires the court, not to ascertain whether the commission's decision is supported by sufficient evidence, but to conduct a plenary review of the record in order to make an independent determination of this issue."Quarry Knoll II at 727.
The defendants argue in their briefs that the plaintiff is not entitled to the benefit of the § 8-30g standard of review, claims the proposed development does not meet the legislative intent for an affordable housing development. The proposed development is for a mixed use development of housing units, one of which would be deemed affordable, and an expansion of an existing commercial operation — the housing and services of oil delivery trucks, dispatch of oil service vehicles, and an office attendant to these commercial services.
The question of what constitutes an affordable housing development subject to § 8-30g has come to our courts before. The statutory definition of an "affordable housing development" is "a proposed housing development which is (A) assisted housing, or (B) a set-aside development." Section 8-30g (a)(1). A set-aside development, which plaintiff asserts covers the applications at issue is, briefly speaking, "a development in which not less than thirty percent of the dwelling units" will by deed or other recorded restriction or covenant only be sold or rented, for a period of at least 40 years, as affordable housing as deemed under law. Section 8-30g (a)(6).
The legislature, in all of its amendments of the affordable housing legislation, has never imposed a minimum number of units, nor a prohibition on a mixed use application for a § 8-30g housing development. Accordingly, this court should not read a minimum requirement or a restriction on use of the property where it has not been implied by the legislature. Therefore, the scope of review undertaken in these appeals is that provided by by § 8-30g (c) as amended byPublic Act 00-206 Section 1(g).
In exercising the duty of plenary review, the court in reviewing the record made in the zoning recording (727) must consider, "whether the commission has sustained its burden of proof, namely that: its decision is based upon the protection of some substantial public interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that can be made to the application that would permit the application to be granted . . . . in order to make an independent determination of the issue. (Citation omitted)." (727). CT Page 11393
V. DISCUSSION
 Proposed Preliminary Site Plan and Special Permit Applications.
The proposed preliminary site plan approval sought by the applicant was for the construction of two housing units in a new structure and office space and a housing unit in an existing structure in an R-6 zone, the property located at 701 West Putnam Avenue, Greenwich.
The existing improvements at the property consist of a 2,964 sq. ft. building utilized in the fuel oil business for the servicing and overnight parking of fuel oil trucks. The commission found that this is not a permitted non-conforming use at this location. The only previously permitted nonconforming use at this location is an automotive detailing and service facility. The approval of that use required the owner to implement a landscaping screening plan that was never done. The property abuts residential properties where the screening should have been implemented. When the present owner of the property, Cortese, took title in 1996 she did not then, and has not since utilized the property for automobile detailing, servicing or repair.
In 1997, Cortese filed an application before the commission to change the nonconforming use to that which she was — and still is engaged in, fuel oil truck repair, parking and garaging. The application also sought to add a second story to the existing 2,964 sq. ft. building for purposes of an office. After public hearing where comment and questions were mixed, the applicant withdrew her application.
Now, the applicant comes back to the commission in the same building, asking for permission, instead, for a 2,232 sq. ft. office and 732 sq. ft. affordable housing unit, seeking the entire application to be treated under § 8-30g. Accompanying this application as a part of the site plan, is a new two family building on an abutting lot, owned by Cortese. She acknowledges that this is, in the R-6 residential zone, a use as a matter of right, and therefore not the part of the application that was subject to significant scrutiny. This two family building is not being constructed for dedicated affordable housing units, but rather subject to market rates. In denying the applications before it, the commission also recommended that at least one of the two units that was reconstructed in the new building as of right be deemed affordable, and recommended this as a reasonable change to the plan. The applicant did not return to the Commission with any prepared modification to the plan.
The commission denied the applications primarily because they perceived CT Page 11394 it as an attempt to bootstrap an illegal expansion of a nonconforming use through the construction of an affordable housing unit that would be set in a commercial environment inappropriate to its residential character. Further it found it unhealthful for the residents. The affordable unit was to be placed over the garage where nine fuel oil trucks were to be serviced, parked, repaired and dispatched. It was expected in the cold weather they would be dispatched at odd hours, not just during the business day.[11]
The court finds the case at hand is distinguishable from Frederico v.Planning and Zoning Commission, 5 Conn. App. 509, 500 A.2d 576 (1985). There, "inchoate violations . . . which may never occur" were rejected as a basis for a denial of an application before the Commission. In the applications before the defendant, there were existing and ongoing use violations which the applicant sought to expand and intensify in the prepared application.
The zoning violations are inherent in the plan as proposed. Garrisonv. Planning Board of Stamford, 66 Conn. App. 317 (2001). Beyond the existing violations, the application seeks to expand the nonconforming, illegal use with a large office. Therefore this violation piece is inherent in the application plan itself, as it was submitted. Therefore, the approval sought here, is not `otherwise lawful', beyond the existing already illegal use.
Essentially, the unit sought for affordable housing was an excuse by the Applicant to avail itself of the benefit of § 8-30g scrutiny and review when it knew that its otherwise commercial application had been and would likely be again looked upon unfavorably. The court finds this an abuse of the purposes and goals of the affordable housing legislative scheme.
In the context of the plenary review here, the court finds the municipality's interest in protecting its zoning regulations and comprehensive plan to prevent the expansion of unauthorized nonconformities far outweighed the benefit that this particular affordable housing plan offered to the overall need to ameliorate the status of affordable housing in Connecticut's communities, and here, in Greenwich in particular, whereas the Commission observed and recommended, the two housing units that could be built, as of right, were available for affordable housing dedication.[12]
The lack of safe access to the residents and visitors to the affordable housing unit was also a basis for denial. Upon a review of the plan and photographs, as well as the statements in the record, upon plenary CT Page 11395 review, the court concurs. The truck driver's visibility on the site, especially when backing in, creates a safety hazard to the residents that has no apparent remedy. There are no modifications that could have been recommended within the context of the plan as presented.
Upon plenary review, the court finds that the commission has satisfied its burden of proof. The other bases offered for the Commission's denial need not, therefore, be reached.[13] The appeals are dismissed.
_____________________________ Lynda B. Munro Judge of the Superior Court